UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAVEL NAZAROV, Ph.D                    CIVIL ACTION

VERSUS                                 NUMBER: 08-3978

LOUISIANA STATE UNIVERSITY, <u>ET</u> <u>AL</u>.      SECTION: "R"(5)


**<u>ORDER AND REASONS</u>**


Presently before the Court is the motion for summary judgment of defendant, the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College ("LSU"), plaintiff's opposition thereto, and the parties' various reply and supplemental memoranda. (Rec. docs. 53, 67, 80, 87, 90).[1]/ Also before the Court are the parties' counter-motions wherein they seek to strike portions of their opponent's summary judgment submissions. (Rec. docs. 68, 73, 76, 89). For the reasons that follow, defendant's motion for summary judgment is granted and the parties' motions to strike are granted in part and denied in

---

[1]/ LSU's co-defendant, Dr. Iris Lindberg, had joined in the motion for summary judgment and was ordered dismissed from the case following oral argument on January 28, 2010. (Rec. doc. 83).

part.[2]/

Plaintiff is a native and a citizen of Russia who possesses masters and doctorate degrees in biochemistry from Moscow State University. Plaintiff was hired effective February 1, 2007 by the LSU Health Services Center, New Orleans Campus, for the position of postdoctoral researcher in the Department of Biochemistry laboratory under the direction and supervision of the lab's longtime director, Dr. Iris Lindberg ("Lindberg"). During the nearly twenty-three years that she directed the lab, Lindberg had hired and supervised employees from many foreign countries including Russia, Ukraine, Romania, Poland, France, Germany, England, Spain, China, Japan, Costa Rica, and Korea, hiring only a handful of Americans in the totality of the twenty-six years that she has functioned in that position.

By all accounts, the working relationship between plaintiff and Lindberg began to deteriorate soon after he started on the job. On February 28, 2007, just four weeks post-hire, Lindberg sent plaintiff an e-mail urging him to look for work elsewhere and threatening to write a termination letter unless, within two weeks, his performance improved radically in the following areas: 1) lack of planning and the organization of materials needed for

---

[2]/ The Court has chosen to address defendant's motion for summary judgment first. The evidence which was excluded by virtue of the Court's rulings on the motions to strike was not considered in passing upon defendant's dispositive motion.

experiments; 2) lack of productivity as compared with other postdoctoral workers; and, 3) lack of punctuality and initiative. When plaintiff's performance did not improve to a level of Lindberg's liking, on March 5, 2007, she forwarded an e-mail to the Biochemistry Business Manager asking him to prepare a ninety-day termination letter to be signed by Dr. Arthur Haas, Professor and Head of the Department of Biochemistry and Molecular Biology. On March 15, 2007, Dr. Haas issued the aforementioned termination letter advising plaintiff that his employment would end ninety days later on June 15, 2007.

Following the issuance of a termination letter, the situation between plaintiff and Lindberg experienced little, if any, significant improvement. Accordingly, by letter dated May 14, 2007, Lindberg advised plaintiff that she was considering terminating his employment earlier based on the following areas of alleged unsatisfactory performance: 1) failure to respond to multiple direct requests from her; 2) failure to adequately label materials; 3) not being present during core working hours; and, 4) diminished productivity. Plaintiff was invited to respond to the allegations raised in Lindberg's letter within one week. He did so on May 21, 2007, whereupon Lindberg notified him that his employment would be terminated effective on the close of business on May 29, 2007, with the four areas of unsatisfactory performance being cited as the reasons for the discharge.

In the interim, plaintiff's internet activity while at the lab, like all other LSU employees, had been monitored via software designed to detect inappropriate internet usage as defined in a memorandum from the Chancellor. The IT department detected a significant amount of inappropriate internet usage occurring on May 12 and 13, 2007. That information was conveyed to Dr. Haas, unbeknownst to Dr. Lindberg, who contacted University Police on May 18, 2007 and requested that plaintiff be banned from LSU property. While Lindberg asked that a copy of the internet usage report be placed in plaintiff's personnel file, she was not provided with a copy of it at the time and thus did not read it. Plaintiff was notified of the ban from LSU property on May 24, 2007. Subsequent to plaintiff's termination, Lindberg hired a Polish native to perform the work which plaintiff had originally been hired to do.

Defendant now moves for the dismissal of plaintiff's claims of national origin discrimination under Title VII, 42 U.S.C. §§1981 and 1983, and attendant state law, LSA-R.S. 23:332, arguing that under Rule 56(e), Fed.R.Civ.P., there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Defendant contends that plaintiff has failed to establish a prima facie case of discrimination and that it had legitimate, nondiscriminatory, and nonpretextual reasons for the termination of plaintiff's employment. Plaintiff opposes defendant's motion on all fronts.

Summary judgment is appropriate under Rule 56(c) when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986). Although all inferences drawn from the evidence are to be resolved in the non-movant's favor, he may not rest on the mere allegations or denials in his pleadings. Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Rather, once a properly supported motion for summary judgment is made, the burden shifts to the non-movant who bears the burden of proof at trial to show with "'significant probative' evidence" that there exists a triable factual issue. Kansa Reinsurance v. Cong. Mortgage Corp. of Texas, 20 F.3d 1362, 1371 (5th Cir. 1994)(quoting In re: Municipal Bond Reporting Antitrust Litig., 672 F.2d 436, 440 (5th Cir. 1982)). That burden is not satisfied by "... 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' .... by 'unsubstantiated assertions,' ... or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(citations omitted). Rather, the nonmovant "... must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case; naked assertions of an actual dispute will not suffice." Matter of Lewisville Properties, Inc., 849 F.2d 946, 950 (5th Cir. 1998). The insufficiency of the proof must be such that it would prevent a rational finder of fact from finding for the

5

non-moving party. <u>Phillips Oil Co. v. OKC Corp</u>., 812 F.2d 265, 272-73 (5th Cir.), <u>cert</u>. <u>denied</u>, 484 U.S. 851, 108 S.Ct. 152 (1987). And in employment discrimination cases, summary judgment is not precluded merely because the plaintiff alleges that the defendant was motivated by discriminatory intent. <u>Ward v. Bechtel Corp.</u>, 102 F.3d 199, 202 (5th Cir. 1997).

Plaintiff's suit is grounded upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, <u>et</u>. <u>seq</u>.; 42 U.S.C. §§1981 and 1983; and, LSA-R.S. 23:332. (Rec. doc. 9, pp. 1-2). The Fifth Circuit has held that the elements of a claim of employment discrimination under Title VII and §1983 are the same, <u>Wallace v. Texas Tech Univ.</u>, 80 F.3d 1043, 1047 (5th Cir. 1986), and the cited Louisiana employment discrimination statute is analyzed under the same standards as Title VII. <u>Kimble v. Georgia Pacific Corporation</u>, 245 F.Supp. 2d 862, 873 n. 16 (M.D. La. 2002), <u>aff'd</u>, 67 Fed.Appx. 248 (5th Cir. 2003)(citing <u>Nichols v. Lewis Grocer</u>, 138 F.3d 563, 566-67 (5th Cir. 1998)). One analysis will therefore be used to evaluate plaintiff's claims under Title VII, §1983, and R.S. 23:332. The Fifth Circuit has also held, however, that §1981 does not encompass discrimination based solely on national origin. <u>Bullard v. OMI Georgia, Inc.</u>, 640 F.2d 632, 634 (5th Cir. Unit B 1981); <u>Alvardo v. Shipley Donut Flour & Supply Co., Inc.</u>, 526 F.Supp.2d 746, 754 (S.D. Tex. 2007); <u>Mouriz v. Avondale Shipyards, Inc.</u>, 428 F.Supp. 1025, 1027 (E.D. La. 1977). In light of that

6

authority, plaintiff's purported claim under §1981 is hereby dismissed.

Title VII prohibits discrimination by employers against any individual because of that individual's race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2(a). Intentional discrimination can be proven by either direct or circumstantial evidence. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002), cert. denied, 539 U.S. 926, 123 S.Ct. 2572 (2003).

Absent direct evidence, a plaintiff's claim of employment discrimination is analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26 (1973). Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 345 (5th Cir. 2007). Under McDonnell Douglas, a plaintiff alleging intentional discrimination must first prove up a prima facie case by establishing the following elements: 1) that he is a member of a protected class; 2) that he was subjected to an adverse employment action; 3) that he was qualified for his position; and, 4) that others similarly situated were treated more favorably. Jusaf v. Southwest Airlines, 2008 WL 4948615 at *3 (5th Cir. 2008). With respect to the fourth element, in cases such as this one where the plaintiff alleges that he was terminated while other employees

outside the protected class were treated more favorably, to prove up his <u>prima facie</u> case plaintiff must demonstrate that the defendant gave preferential treatment to a person outside the protected class under nearly identical circumstances; that is, that the misconduct for which plaintiff was discharged was nearly identical to that engaged in by other employees outside of the protected class. <u>Id</u>. (citing <u>Okoye v. Univ. of Tex. Houston Health Science Ctr.</u>, 245 F.3d 507, 514 (5th Cir. 2001).  For conduct to be nearly identical, the individual given preferential treatment needs to have engaged in conduct similar to plaintiff and must have had the same supervisor as plaintiff. <u>Id</u>. (citing <u>Wyvill v. United Companies Life Ins. Co.</u>, 212 F.3d 296, 305 (5th Cir. 2000), <u>cert</u>. <u>denied</u>, 531 U.S. 1145, 121 S.Ct. 1081 (2001)).  The employer must also be aware of the alleged misconduct of the other employee(s). <u>Id</u>. (citing <u>Wallce v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 221 (5th Cir. 2001).

If the plaintiff proves up a <u>prima facie</u> case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S.Ct. at 1824.  If the defendant meets this burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either: 1) the defendant's reason is not true, but is instead a pretext for discrimination; or 2) that the defendant's

reason, while true, is only one of the reasons for its conduct and another "motivating factor" is the plaintiff's protected characteristics. <u>Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.</u>, 482 F.3d 408, 411-12 (5th Cir. 2007). Plaintiff can meet this burden "... by producing circumstantial evidence sufficient to create a fact issue as to whether the employer's nondiscriminatory reasons are merely pretext for discrimination." <u>Machinchick v. PB Power, Inc.</u>, 398 F.3d 345, 356 (5th Cir. 2005).

In <u>Reeves v. Sanderson Plumbing Products</u>, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106 (2000), the Supreme Court opined that "... the trier of fact may still consider the evidence establishing the plaintiff's <u>prima</u> <u>facie</u> case 'and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual.'" <u>Id</u>. (quoting <u>Texas Dept. of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 255 n.10, 101 S.Ct. 1089, 1094-95 n. 10 (1981)). A plaintiff in an employment discrimination case may show pretext by demonstrating that the proffered reasons for the challenged employment action are false or "... unworthy of credence." <u>Nasti v. CIBA Speciality Chemicals Corp.</u>, 492 F.3d 589, 593 (5th Cir. 2007). If the plaintiff is successful in showing that the proffered explanation is merely pretextual, that showing, when coupled with the <u>prima</u> <u>facie</u> case, will usually be sufficient to survive summary judgment. <u>Reeves</u>, 530 U.S. at 146-48, 120 S.Ct. at 2107-09. Nevertheless, it is the plaintiff who bears the burden of

demonstrating the existence of a genuine issue of material fact on whether the defendant discriminated on the basis of plaintiff's membership in the protected class. Id. at 143, 120 S.Ct. at 2106. In the final analysis it is the plaintiff who bears the ultimate burden of proving that he was the victim of unlawful discrimination. Marcantel v. State of La. Dept. of Transp. and Dev., 37 F.3d 197, 200 (5th Cir. 1994).

In his amended complaint, plaintiff alleged that the actions of Dr. Lindberg in disallowing him to take sick leave, reprimanding him without cause, forbidding him to call his family on the telephone or to speak Russian in the lab, and singling him out for the way he pronounced English created a hostile work environment for which he seeks redress under Title VII. (Rec. doc. 9, p. 3). In arguing that defendant's stated reasons for terminating him were a pretext for unlawful discrimination, plaintiff again purports to assert a separate hostile work environment claim under Title VII. (Rec. doc. 67, pp. 18-22). As observed by the Fifth Circuit, "[a] hostile work environment claim arises in cases where harassment occurred, but no tangible employment action was taken." Reine v. Honeywell International, Inc. v. Ellerth, 2010 WL 271352 at *1 (5th Cir. 2010)(citing Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 753-54, 118 S.Ct. 2257, 2264-65 (1998)). See also Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264-65 (5th Cir. 1999). Given the fact that plaintiff suffered a tangible employment action

in the form of being terminated, a separate Title VII claim for hostile work environment does not lie here.

In opposing defendant's motion for summary judgment plaintiff first argues that he has presented direct evidence of discrimination. Plaintiff offers his own declaration that he witnessed frequent instances were fellow international co-workers spoke in their native tongues on the phone or in front of Dr. Lindberg without repercussion. (Rec. doc. 67, pp. 13-15).

At the hearing on defendant's motion for summary judgment, the parties essentially agreed that the cornerstone of plaintiff's claim of national origin discrimination was his allegation that he was continually told not to speak Russian in the lab. The documentary evidence bearing on the language issue, however, is rather scant indeed. As part of their summary judgment submissions, both parties have provided the Court with a document entitled "Introduction to the Lindberg Lab". Dr. Lindberg testified in her deposition that she had prepared the document as a means of formal orientation for the postdoctoral researchers under her supervision. The seventh page of the orientation document contains a section dealing with lab notebooks which were "... to be kept on Mylar-reinforced looseleaf notebook paper in 3 ring binders ..." Between the words "paper" and "in" in the aforementioned quote on both copies of the orientation document submitted by the parties is the handwritten notation "in English". (Rec. doc. 53-5, p. 11).

Aside from the "Introduction to the Lindberg Lab", the only other document submitted by the parties that touches upon language is a copy of an e-mail dated January 28, 2007 from Lindberg to plaintiff in which she expressed concern over his proficiency in English and the need for him to improve his skills to effectively communicate with others in the lab. (Rec. doc. 67-9, p. 23). At his deposition, plaintiff was asked what language was commonly spoken in the lab and he identified English. The reason that this was so, plaintiff testified, was because there were "... people of different nationalities in the lab" although he did speak Russian with another co-worker, Vadym Rusnak. (Rec. doc. 80-1, pp. 25-26). When Dr. Lindberg was deposed on January 11, 2010, she was not asked whether she had ever instructed plaintiff not to speak Russian in the lab. She did testify that throughout the lengthy time period that she supervised the lab the vast majority of the researchers were from countries other than the United States and that no complaints of employment discrimination had ever been lodged against her. (Rec. doc. 80-3, pp. 1-50).

The numerous e-mails that have been submitted to the Court contain concerns over plaintiff's work performance but do not mention anything about his English proficiency or the fact that he may have spoken some other language in the lab. The reasons cited by Lindberg for plaintiff's proposed termination have nothing to do with his nationality or the language that he spoke and when he

12

responded to Lindberg's letter of May 14, 2007, plaintiff made no suggestion to the contrary. The record contains no statement that plaintiff was terminated because he was Russian or spoke Russian. The two pieces of documentary evidence that deal with language promoted English as the preferred language among workers from various countries, as plaintiff acknowledged during his deposition, but do not single out Russian as a prohibited dialect. An inference is required to reach this conclusion. <u>See</u>, e.g., <u>Haas v. ADVO Systems, Inc.</u>, 168 F.3d 732, 733 (5th Cir. 1999). Aside from his own self-serving declaration, plaintiff has come forward with only circumstantial, not direct, evidence of discrimination.

Analyzed under the <u>McDonnell Douglas</u> framework, defendant concedes that plaintiff is a member of a protected class and that he suffered an adverse employment action. However, defendant disputes whether plaintiff was qualified for his position and whether he was treated less favorably than another similarly situated employee, the third and fourth elements of his <u>prima</u> <u>facie</u> case. Although plaintiff did not live up to Lindberg's job expectations, she admitted in her deposition that on paper, plaintiff appeared to be qualified for the job. In order to establish a <u>prima</u> <u>facie</u> case of disparate treatment, plaintiff must thus show, through competent summary judgment evidence, that another employee who was not in a protected class engaged in conduct nearly identical to that for which he was terminated but

was retained by LSU.

While plaintiff strenuously challenges the validity of the criticisms and reasons given by Lindberg, his evidence bearing on the fourth element of his prima facie case is tenuous at best. He has provided the Court with no deposition testimony or other competent summary judgment evidence demonstrating that other lab workers whose performance was questioned by Dr. Lindberg were retained while he was not. Plaintiff's declaration proves little because an employee's subjective belief that he suffered an adverse employment action as a result of discrimination is not enough. Ray v. Tandem Computers, Inc., 63 F.3d 429, 434-35 (5th Cir. 1995); Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994); Hornsby v. Conoco, Inc., 777 F.2d 243, 246 (5th Cir. 1985); Elliot v. Group Medical & Surgical Serv., 714 F.2d 556, 564 (5th Cir. 1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2658 (1984).

Alternatively, defendant having articulated legitimate, nondiscriminatory reasons for the challenged employment action, perhaps the biggest hurdle plaintiff faces in avoiding summary judgment is the "same actor" inference of nondiscrimination as set forth in Brown v. CSC Logic, 82 F.3d 651, 658 (5th Cir. 1996). In Brown, the Fifth Circuit adopted the Fourth Circuit's decision in Proud v. Stone, 945 F.2d 796, 797-98 (4th Cir. 1991), that when the same supervisory employee hires and fires a plaintiff within a short period of time, "... a strong inference exists that

14

discrimination was not a determining factor for the adverse action taken by the employer." In Proud, the court explained that "... claims that employer animus exists in termination but not in hiring seem irrational" and that "it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." Proud, 945 F.2d at 797-98 (internal quotations omitted). Although the same actor inference is not mandatory, Haun v. Ideal Indus., Inc., 81 F.3d 541, 546 (5th Cir. 1996), plaintiff must point to other meaningful evidence weakening its application. Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 271 (9th Cir. 1996).

Plaintiff in the present case goes so far as to suggest that the discrimination he allegedly endured at the hands of Dr. Lindberg began even before he started on the job. It strikes the Court as highly unusual and illogical that, at the same time that Lindberg was mulling over plaintiff's qualifications and background preparatory to an offer of employment, that she was already in the process of devising a plan for plaintiff's ouster simply because he was Russian. The Fifth Circuit applied the same actor inference in Brown where the hiring and firing were four years apart. Brown, 82 F.3d at 658. Here, Lindberg hired and terminated plaintiff just four months later. Defendant terminated plaintiff for reasons that are legitimate and nondiscriminatory on their face. While plaintiff strongly disputes the truthfulness of defendant's reasons, other

15

than his own subjective beliefs he has come forward with no competent summary judgment evidence that national origin played any part in the challenged employment action. Id. at 656-58; West v. Nabors Drilling USA, Inc., 330 F.3d 379, 385 (5th Cir. 2003).

By way of a reply memo, plaintiff raises the applicability of an EEOC Guideline against English-only workplace rules. 29 C.F.R. §1606.7. Plaintiff acknowledges that such guidelines do not carry the force of law. (Rec. doc. 87, p. 9). In one of the two cases cited by plaintiff, EEOC v. Synchro-Start Products, Inc., 29 F.Supp.2d 911, 914 (N.D. Ill. 1999), that court concluded that the cited regulation created only an inference which "... in evidentiary terms is a tie-breaker" and both that case and EEOC v. Premier Operator Services, Inc., 113 F.Supp.2d 1066, 1075 (N.D. Tex. 2000) were disparate impact cases, not disparate treatment cases like this one, where the plaintiff need not prove the employer's intent to discriminate. The court in Barber v. Lovelace Sandia Health Systems, 409 F.Supp.2d 1313, 1335-37 (D. N.M. 2005), pondered what effect a violation of §1606.7 would have in the context of a disparate treatment claim and concluded that such a violation would, at most, establish only one element of the plaintiff's prima facie case. Id. The vast majority of the researchers employed by Dr. Lindberg were from countries other than the Untied States. As plaintiff himself acknowledged at his deposition, English was the language commonly used at the lab

16

because of its universal nature. Plaintiff also testified he was sufficiently proficient in English to communicate with others in the lab and to conduct experiments. Defendant has offered a sufficient business justification for the practice. Id. at 1337 (citing Long v. First Union Corp of Virginia., 894 F.Supp. 933 (E.D. Va. 1995), aff'd, 86 F.3d 1151 (4th Cir. 1996)).

Stripped to essentials, other than his own self-serving subjective beliefs, plaintiff has not come forward with sufficient probative evidence to establish that other similarly situated employees were treated more favorably than himself. Alternatively, defendant having articulated legitimate, nondiscriminatory reasons for the challenged employment action, plaintiff has not shown that his nationality played any part in the decision to terminate him. These conclusions are buttressed by the fact that the very same individual who hired plaintiff, fully cognizant of his national origin, fired him within an extremely brief period of time. Summary judgment is therefore appropriate on plaintiff's claims of intentional discrimination under Title VII and §1983. Douglass v. United Serv. Automobile Assoc., 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).

In addition to defendant's motion for summary judgment, also before the Court are the parties' cross-motions to strike portions of their opponent's summary judgment submissions. For his part, plaintiff seeks to strike, in whole or in part, the affidavits of

17

Dr. Lindberg, Akihiko Ozawa, Sang Nam Lee, and Dorota Kowalska on various grounds, including being inadmissible hearsay, not based on personal knowledge, and not being properly sworn. (Rec. doc. 68). For its part, defendant seeks to strike certain words, phrases, and characterizations that appears in plaintiff's opposition to its motion for summary judgment. (Rec. doc. 73). The specific items sought to be stricken are discussed more fully below.

First, plaintiff moves to strike paragraphs fifteen and nineteen of Dr. Lindberg's affidavit as being inadmissible hearsay, speculative, not based on personal knowledge, and/or lacking proper authentication. The paragraphs preceding the ones sought to be stricken lay a sufficiently proper foundation for the facts set forth in the paragraphs that follow. The matters set forth in paragraph nineteen are largely duplicative of facts that were brought out during the depositions of Lindberg and Dr. Haas. Likewise, the information conveyed by exhibit K to the Lindberg affidavit was revealed through other summary judgment evidence that is properly before the Court.

Next, plaintiff seeks to strike paragraphs five through nine of the affidavit of Akihiko Ozawa. (Rec. doc. 53-6). Again, the Court finds that the representations made in the affidavit were sufficiently based upon the affiant's personal knowledge. To the extent that the matters stated in paragraph nine touch upon the ultimate issue to be resolved in this case, they were not

considered by the Court.

Plaintiff next moves to strike the affidavit of Sang Nam Lee because, _inter alia_, it is not properly sworn. The statement in question was prepared in affidavit form but was not executed in the presence of a notary. (Rec. doc. 53-7, pp. 2-4). Instead, it is accompanied by a "Certificate of Acknowledgment of Execution of an Instrument" which indicates that they document was executed freely and voluntarily before a consular associate of the U.S. Embassy in Seoul, Korea. (Rec. doc. 53-7, p. 1). Because Lee's statement is not in traditional affidavit form or in the form of an unsworn declaration made under penalties of perjury under 28 U.S.C. §1746, the Court was unable to consider it.

Finally, plaintiff moves to strike from the Court's consideration paragraphs five and six of the affidavit of Dorota Kowalska as the matters stated therein amount to a legal conclusion or are not based on personal knowledge. (Rec. doc. 53-8). Once again, to the extent that Kowalkska's affidavit embraces the ultimate issue in this case, those assertions were not considered in evaluating defendant's motion for summary judgment.

Defendant has also moved to strike certain words, phrases, and characterizations that appear in plaintiff's opposition to its motion for summary judgment at being immaterial, impertinent, and scandalous. Among the matters sought to be stricken are the allegations that Dr. Lindberg was possessed of a "... shrill,

hypercritical and almost delusional approach to Nazarov ..." and that her "... lab was a mess."

The Court realizes that this case has been somewhat contentious owing to the fact that neither party's job expectations were met and that the work relationship between the two disintegrated in an extremely short period of time. Although plaintiff has filed no opposition to defendant's motion to strike, such motions are typically viewed with disfavor. <u>Craig Funeral Home, inc. v. State Farm Mutual Auto. Ins. Co.</u>, 254 F.2d 569, 572 (5th Cir. 1958)(Jones, J., special concurrence). While the words and phrases sought to be stricken are perhaps unnecessary and unpleasant, the Court believes that both parties should have an opportunity to characterize the events surrounding plaintiff's employment in the manner they deem necessary. In addition, the opposition memorandum in question has now been of record for some time. Finally, as a practical matter, the Clerk's Office is ill-suited to make sporadic redactions from documents which have already been filed in this case. For these reasons, defendant's motion to strike is denied.

In conclusion, the competent summary judgment evidence that is before the Court reveals that plaintiff's employer hired and supervised employees from a wide range of nationalities for many years without incident. She was obviously sufficiently impressed by plaintiff's paper qualifications and her pre-hire interview of

him to offer him a job. Unfortunately, once plaintiff started on the job a harmonious working relationship between the two could not be achieved, a circumstance that became apparent very quickly. Whether this was due to inadequate skills or poor workplace performance on plaintiff's part, unreasonable screening, expectations, or demands on the part of his supervisor, or some combination thereof is not the question because "... even an incorrect believe that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." <u>Little v. Republic Refining Co., Ltd.</u>, 924 F.2d 93, 97 (5th Cir. 1991). "Motive is the issue." <u>Id.</u> (citing <u>DeAnda v. St. Joseph Hosp.</u>, 671 F.2d 850, 854 n. 6 (5th Cir. 1982)). An employee cannot survive summary judgment merely because he disagrees with the employer's assessment of his performance; the issue whether the employer's perception of his performance, accurate or not, was the real reason for his termination. <u>Bryant v. Compass Group USA, Inc.</u>, 413 F.3d 471, 478 (5th Cir. 2005), <u>cert</u>. <u>denied</u>, 546 U.S. 1090, 126 S.Ct. 1027 (2006). At the end of the day, "a reason cannot be proved to be a 'pretext <u>for</u> <u>discrimination</u>' unless it is shown <u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason" for the employer's decision. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752 (1993). Unfortunately, an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all as long as its

action is not based on prohibited discrimination.  <u>Nix v. WLCY</u>

<u>Radio/Rahall Comm.</u>, 738 F.2d 1181, 1187 (11th Cir. 1984).  The proof

marshalled by plaintiff here simply does not support that

conclusion.  Judgment will be entered accordingly.

    New Orleans, Louisiana, this <u>7th</u> day of <u>  May  </u>, 2010.


                                _____
                                  ALMA L. CHASEZ
                    UNITED STATES MAGISTRATE JUDGE